## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ESTATE OF BRIAN EDWARD FISHER, deceased, by and through the ADMINISTRATRIX OF THE ESTATE JAMIE FISHER, | CIVIL DIVISION<br><br>CASE NO. |
| *Plaintiff,* | **JURY TRIAL DEMANDED** |
| v. | |
| CITY OF PITTSBURGH; PITTSBURGH BUREAU OF POLICE; ROBINSON TOWNSHIP; ROBINSON TOWNSHIP POLICE DEPARTMENT; POLICE OFFICER JORDAN PRICE; and POLICE OFFICER JOSEPH TOMKO | |
| *Defendants.* | |

Plaintiff, by and through counsel, Monte J. Rabner, Esquire and Rabner Law Offices, P.C., files this Complaint in Civil Action and makes the following representation to this Court against the named Defendants as follows:

### JURISDICTION AND VENUE

1. This civil action is brought for redress of deprivations of constitutional rights as protected by the Constitution of the United States of America, the laws of the United States, and rights protected by the Commonwealth of Pennsylvania.

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under Constitution of the United States and involves a federal question.

3. This Court has original jurisdiction under 28 U.S.C. §1343 as the Plaintiff has commenced this civil action to recover damages because of the deprivation of the rights and privileges of a citizen of the United States.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C.§ 1367 over all claims in this civil action that are related to the claims under which this Court has original jurisdiction as they form the same case and controversy under Article III of the Constitution of the United States.

5. This cause of action arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments to the United States Constitution, and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Section 1983.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as all the defendants reside in the Western District of Pennsylvania and all events giving rise to this action occurred within the Western District of Pennsylvania.

**PARTIES**

7. Decedent Brian Edward Fisher ("Decedent") was a 43-year-old adult individual, who at all times relevant hereto resided at 1468 Rydal Street, Pittsburgh, PA 15205.

8. Jamie Fisher, Decedent's sister, was appointed Administratrix of the Estate of Brian E. Fisher pursuant to a grant of Letters of Administration from the Allegheny County Department of Court Records, Wills/Orphans' Court Division dated September 26, 2022.

9. Plaintiff, Jamie Fisher, brings this suit in her capacity as Administratrix of the Estate of Brian E. Fisher.

10. Defendant Police Officer Jordan Price is an adult individual who at all times relevant hereto resided in Allegheny County, Pennsylvania. Police Officer Jordan Price was acting under the color of state law at all relevant times hereto.

11. Defendant Police Office Joseph Tomko is an adult individual who at all times relevant hereto resided in Allegheny County, Pennsylvania. Police Officer Jospeh Tomko was acting under the color of state law at all relevant times hereto.

12. At all relevant times, defendant City of Pittsburgh was a duly organized public entity existing under the laws of the Commonwealth of Pennsylvania. Defendant City of Pittsburgh established, maintained, oversaw, and was responsible for the Defendant Pittsburgh Bureau of Police. At all relevant times defendant City of Pittsburgh was the employer of defendant Police Officer Jordan Price.

13. At all relevant times, defendant Robinson Township was a duly organized public entity existing under the laws of the Commonwealth of Pennsylvania. Defendant Robinson Township established, maintained, oversaw, and was responsible for the Defendant Robinson Township Police Department. At all relevant times Robinson Township was the employer of defendant Police Officer Joseph Tomko.

## FACTS COMMON TO ALL COUNTS

14. On or about September 1, 2022, Robinson Township Police Department received a call from the mother of an adult individual named Leah Hess. Ms. Hess' mother informed the police that she had not seen her daughter in about 24 hours.

15. Upon information and belief, Ms. Hess' mother did not inform the police that Ms. Hess was in any sort of imminent danger or that she had reason to believe that she was in any sort of imminent danger.

16. Upon and information and belief, after receiving the call from Ms. Hess' mother, Robinson Township Police Office Joseph Tomko was dispatched to determine the location and whereabouts of Ms. Hess. No formal missing person report was ever filed with respect to Ms. Hess.

17. Upon information and belief, Officer Tomko subsequently determined that Ms. Hess may have been lawfully present at a house located at 1468 Rydal Street, Pittsburgh, Pennsylvania and that she may have been at that location with an adult male individual.

18. At this time, Officer Tomko had no reason to suspect or believe that Ms. Hess, an adult individual, was in any danger.

19. Officer Tomko had no reason to suspect or believe that Ms. Hess was at the 1468 Rydal Street house against her own free will or volition.

20. Despite this, Officer Tomko decided to proceed to the 1468 Rydal Street address to confirm that Ms. Hess was located there.

21. Ms. Hess was in fact at 1468 Rydal Street prior to the arrival of police. Ms. Hess was staying with Decedent Brian Fisher at the house and had planned to stay there for another week or two.

22. Ms. Hess was at the house with the Decedent completely of her own volition, was not in any sort of danger, and was free and able to leave the house at any time.

23. Prior to proceeding to Rydal Street, Officer Tomko contacted the City of Pittsburgh Police Department because the house located at 1468 Rydal Street is entirely within the city limits of Pittsburgh and outside of Robinson Township.

24. As a result, the Pittsburgh Police Department dispatched Police Officer Jordan Price to 1468 Rydal Street to assist Officer Tomko.

25. The subject house at 1468 Rydal Street is a one-story home with a driveway leading to a garage door and a front yard that slopes downward from the front porch towards Rydal Street. The front door opens up onto a small front porch that has steps that connect with the driveway. The house is located within the Crafton Heights neighborhood of the City of Pittsburgh.

26. Upon both officers' arrival at 1468 Rydal Street, the officers decided that Officer Tomko would proceed to the front door and position himself to the left of the door on the front porch after he began knocking on the door.

27. Officer Price positioned himself in the front yard to the right and downgrade of the front porch. Officer Price did not have a full and unobstructed view of the front door given the fact that he was positioned at an angle to the doorway and was not on level ground with the door.

28. Once both officers were in position Office Tomko began to aggressively knock and bang his fist on the front door of 1468 Rydal Street. At the time that Officer Tomko began to knock it was dark out, the front door was shut, and the blinds were shuttered in the front window.

29. At this time, upon information and belief, both officers had no reason to suspect or believe that Ms. Hess was at the 1468 Rydal Street house against her own free will or volition. No criminal or untoward behavior was suspected.

30. Upon information and belief, Decedent was in a bedroom and Leah Hess was in the living room when Officer Tomko started aggressively knocking on the door. Neither the Decedent or Ms. Hess were able to see outside at this time.

31. Upon information and belief, neither Ms. Hess or the Decedent heard Officer Tomko or Officer Price announce themselves as police. As such, neither Ms. Hess or the Decedent were aware that the police were at the knocking aggressively at the door.

32. Decedent then opened the front door in response to the aggressive knocking. Before the Decedent could even fully present himself through the doorway Officer Price immediately fired three shots from his firearm directly at the Decedent, severally wounding him. These shots were fired within three seconds of the Decedent opening the door.

33. Officer Price has subsequently claimed that he saw a firearm in the Decedent's right hand as the Decedent opened the door and that the Decedent moved his arm in such a way that made Officer Price feel that himself and Officer Tomko were in danger.

34. However, neither Officer Price or Officer Tomko is able to provide any proof that Officer Price was able to see a firearm in the Decedent's right hand and assess that the Decedent was moving the firearm in a threatening manner within seconds of Decedent opening his front door.

35. Given his vantage point both below and to right of the front porch it would not have been possible for Officer Price to see whether or not the Decedent had a firearm in his right hand when he opened the door. The footage from Officer Price's body camera confirms that Officer Price could not have seen a firearm in the hand of the Decedent prior to discharging his weapon and using lethal force.

36. As such, Officer Price had no reasonable basis or suspicion to believe that either himself or Officer Tomko were in any danger when he made the decision to shoot the Decedent immediately and without warning as soon as he opened the door.

37. Prior to Officer Price's unwarranted utilization of lethal force, neither Officer Tomko nor Officer Price attempted to use any de-escalation techniques, nor did they attempt to speak to the Decedent in a professional and nonthreatening manner.

38. Neither Officer Price nor Officer Tomko voiced any verbal warning that deadly force would be used prior to shooting the Decedent multiple times as soon as he opened his front door. Further, no commands were issued to drop the firearm that Officer Price claims he saw in the Decedent's hand. All neighbors who witnessed the event verify that no verbal commands were given by the police prior to Officer Price discharging his firearm.

39. At the time that Officer Price decided to use lethal force the Decedent posed no immediate threat to either of the Officers, to himself, to Ms. Hess, or to anyone else.

40. Officer Price's decision to immediately shoot to kill the Decedent before he even had the opportunity to fully present himself in the doorway shows a complete irreverence for human life and a complete and total disregard for the constitutional rights of the Decedent and any other person who may have answered the door that evening.

41. Upon information and belief, the Decedent suffered numerous penetrating gunshot wounds to his chest as a result of Officer Price discharging his firearm directly at the Decedent suddenly and without warning.

42. Immediately after he was shot, it was clear that the Decedent was incapacitated. Despite this fact, both Officer Price and Officer Tomko retreated to the end of the driveway and did not administer first-aid to the Decedent, exhibiting even further disregard for the life of the Decedent and for his Constitutional rights.

43. Upon information and belief, Officer Price and Officer Tomko called for emergency medical assistance and remained in place at the end of the driveway prior to an ambulance arriving on the scene.

44. Upon information and belief, no first aid was administered to the Decedent until approximately ten minutes after he was shot by Officer Price. Leah Hess attempted to stop his bleeding; however, she is not a trained medical professional and was unable to do.

45. Ms. Hess then went outside and called out for help. At this point, Officers Tomko and Officer Price approached her and removed her from the house. Upon information and belief, this is the first time that Ms. Hess was aware that the police had been at the door or even on the scene.

46. The minutes in which no attempt was made to administer first aid to the Decedent were critical to whether his life could be saved or not. After shooting the Decedent in his doorway for no justifiable reason, Officers Price and Tomko made a decision to let the victim of Officer Price's shooting bleed to death in his home.

47. Despite the efforts of the paramedics who responded, the Decedent was subsequently pronounced dead as a direct result of the multiple gunshot wounds from Officer Price's firearm.

## COUNT I

**Violation of the Fourth and Fourteenth Amendments of the Constitution of the United States of America**

**Jamie Fisher, Administratrix of the Estate of Brian Fisher v. All Defendants**

48. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

49. The above-described killing of an innocent citizen was without legal justification.

50. The Defendants violated Decedent's right to be free from punishment and deprivation of life and liberty without due process of law under the Fourth and Fourteenth Amendments to the United States Constitution and to be free from deliberate indifference to all of those rights by unjustifiably killing him.

51. In committing the acts complained of herein, Officer Price and Officer Tomko acted under the color of state law to deprive the Decedent of his constitutionally protected rights, privileges, and immunities guaranteed under the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

52. These rights, privileges, and immunities include the right to bodily integrity and the right to be free from the use of excessive force by persons acting under the color of state law.

53. Officers Price and Tomko failed to objectively and reasonably assess the facts and situation when Officer Price decided to use lethal force on the Decedent as soon as the Decedent opened his door.

54. The use of lethal force was done with the purpose and intent of depriving the Decedent of the rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

55. At the time Officer Price began shooting at Decedent, Decedent was not presenting any danger to Officers Price or Tomko, or to anyone else.

56. Officer Price could not have subjectively believed himself or Officer Tomko to be in danger.

57. Officer Price made a choice to unreasonably use deadly force. His decision to use deadly force did not relate in any way to a proper and conscious assessment of danger and was objectively unreasonable under the circumstances.

58. The use of deadly force was excessive because there was no an immediate danger to the life of Officers Price or Tomko, the involved officers did not give a verbal warning that deadly force would be used, there were no commands given, and there were other reasonable options available other than shooting and killing Decedent as soon as he opened his door and before he even had time to step fully through the doorway.

59. The Defendant Officers further deprived the Decedent of necessary medical care.

60. The conduct of Officer Price and Officer Tomko was willful, wanton, malicious, and done with reckless disregard for the rights and safety of the Decedent.

61. The conduct of Defendants Jordan Price and Joseph Tomko shocks the conscience. Defendants acted as they did despite the knowledge they had or should have had that they were not in danger. Defendants' conduct was carried out with deliberate indifference and/or reckless disregard to the constitutional rights of Decedent.

62. As a direct and proximate result of the violation of his constitutional rights by the defendants, Decedent suffered the general and special damages as alleged in this Complaint and ultimately lost his life.

   WHEREFORE, Plaintiff Jamie Fisher, as Administratix of the Estate of Brian Fisher, demand relief under 42 U.S.C. §§ 1983, compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages, and any other equitable remedy that the Court deems reasonable and just.

## COUNT II

### MUNICIPAL LIABILITY FOR FAILURE TO TRAIN

**Jamie Fisher, Administratrix of the Estate of Brian Fisher v. Defendant City of Pittsburgh and Defendant Robinson Township**

63. Plaintiffs incorporate by reference each and every allegation in the preceding paragraphs of this Complaint as if the same were fully set forth herein

64. The actions of the Police Officers alleged herein were endorsed and approved by both the City of Pittsburgh and Robinson Township. The City of Pittsburgh and Robinson Township acted through their respective police departments, and through their senior officers and policymakers, supervisors and other policymakers, pursued policies, practices and customs that were a direct and proximate cause of the unconstitutional rights alleged here and were the result of deliberate indifference.

65. The policies, customs, practices, and procedures of the City of Pittsburgh and Robinson Township which allow the use of deadly force without any expectation of danger are unconstitutional per se.

66. Defendant City of Pittsburgh and Defendant Robinson Township failed to adequately train and supervise its employees in the performance of their duties.

67. Specifically, the customs, practices, and policies of both Defendants were not adequate to train its policies officers, including but not limited to defendants Officer Price and Officer Tomko. The City of Pittsburgh and Robinson Township's inadequate training includes but is not limited to:

   a. Failing to teach officers how to properly to give verbal warnings prior to using deadly force;

b. Failing to teach officers how to properly give commands prior to using deadly force;

c. Failing to teach officers how to properly announce themselves as police and to use less lethal options prior to restoring to the use of deadly force.

d. Failure to properly screen, supervise, discipline, transfer, counsel or otherwise control police officers, including the officers who killed Brian Fisher who are known or should have been known to engage in improper use of excessive force and deadly force;

e. Creating and implementing procedures that allow for and promote the use of deadly force in unwarranted and under unjustified circumstances;

f. Training the officers to use deadly force seconds after encountering an individual rather than less confrontational and less harmful methods such as physical restraint or other detention techniques.

g. Otherwise violating the rights of the Decedent.

68. The culture, practices, and customs at the Pittsburgh Police Department and Robinson Police Department are so inherent and the use of deadly force is so ingrained that officers will automatically and primarily begin to analyze situations toward the use of their deadly weapons and shoot an individual immediately upon them opening their door.

69. Such Police Officers will shoot and use deadly force without evaluating the scene and often with virtually no data upon which to make an objectively reasonable assessment and decision. Many times an unreasonable assessment will be made in isolation, in spite of other compelling reasons and evidence which would produce a non-hostile approach and a result free of injury or death.

70. As a consequence of the informal culture, practice and custom of Pittsburgh Police Department and Robinson Police Department to shoot immediately, a pattern of repeated serious violations of the Constitutional Rights of citizens has formed. Decedent lost his life and suffered the deprivations alleged herein as a direct and proximate result of this long-standing practice, custom culture by the Pittsburgh and Robinson Police Department's use of deadly force as more particularly alleged above.

71. The policies, customs, practices, and procedures of the City of Pittsburgh and Robinson Township were not adequate to train its officers to properly render first aid to citizens

72. The failure of the Defendants to provide adequate training with regard to using deadly force, caused the deprivation of the rights of Decedent by Officer Price and Officer Tomko.

73. The Defendants failed to develop and implement policies, procedures, and protocols that then enabled their employees to act with deliberate indifference to the constitutional rights of individuals including Decedent Brian Fisher.

74. The Defendants actions, errors, and omissions, as more fully described in the factual section of the within Complaint, constituted violations of Decedent's rights, privileges, and immunities including the right to bodily integrity and the right to be free from the use of excess force.

75. The Defendants were aware of the obvious need for improvement and inadequacy of their programs and procedures and that the same would result in a violation the Constitutional rights of individuals including Decedent Brian Fisher.

76. The Defendants policymakers were deliberately indifferent to the need for proper training and supervision to protect the rights of the Decedent and other citizens.

77. The failure of the Defendants to provide and ensure proper training, supervision and discipline has caused the Decedent and others to suffer violations of their Constitutional Rights and created an environment which encourages and allows officers to take the law into their own hands.

78. As a result of the foregoing, the Defendants persistent and widespread practice of failing to properly train their police officers on the use of lethal force was deliberately indifferent to the civil rights of all individual in general and violated the civil and Constitutional rights of the Decedent Brian Fisher in particular.

79. By failing to provide adequate training to police officers, the Defendants acted with an intentional, reckless, and callous disregard to the constitutional rights and the life of the Decedent.

WHEREFORE, Plaintiff Jamie Fisher, as Administratix of the Estate of Brian Fisher, demand relief under 42 U.S.C. §§ 1983, compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages, and any other equitable remedy that the Court deems reasonable and just.

## COUNT III

### ASSAULT AND BATTERY

**Jame Fisher, Administratix of the Estate of Brian Fisher v. Officer Jordan Price**

80. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

81. Officer Price intentionally shot Decedent multiple times simply because Decedent opened his front door in response to Officer Tomko knocking on the door.

82. Based on his location below the porch Officer Price could not have seen a firearm in the Decedant's hand nor could he have assessed within mere seconds that the Decedent posed an immediate threat to the police officers.

83. Neither Officer Price nor Officer Tomko gave any verbal commands to the Decedent after he opened the door.

84. The conduct of Officer Price and Officer Tomko was malicious, wanton, oppressive, and completed with a conscious disregard for the rights of the decedent

85. The aforementioned acts of Officer Price constitute an unwarranted assault and battery upon the Decedent that was intolerable and wholly unnecessary.

86. As a direct and proximate result of the assault and battery committed by Officer Price, the Decedent was caused to suffer severe mental and physical pain and suffering, loss of enjoyment of life and ultimately lost his life.

WHEREFORE, Plaintiff Jamie Fisher, as Administratix of the Estate of Brian Fisher, demand relief under 42 U.S.C. §§ 1983, compensatory and punitive damages against Defendants, jointly and/or severally, in an amount in excess of the statutory jurisdictional limit, plus interest, costs, attorney's fees as well as delay damages, and any other equitable remedy that the Court deems reasonable and just.

## COUNT IV

### State Law Cause of Action Pursuant to 42 Pa. C.S.A. § 8302 (Right of Survival)

### Jamie Fisher, Administratrix of the Estate of Brian Fisher v. All Defendants

87. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

88. Plaintiff Jamie Fisher, in her capacity as Administratrix of the Estate of Brian Fisher, bring this action on behalf of the Estate pursuant to 20 Pa. C.S.A. §3373 and 42 Pa. C.S.A. §8302

89. As a direct and proximate result of the actions of the named Defendants, the Decedent suffered severe bodily injuries by way of penetrating gunshots, subjecting him to pain and suffering and ultimately resulting in his death.

90. The Plaintiff, as Administratrix, is entitled to loss of future earning power of the Decedent from the date of his death until the end of his life expectancy.

91. The Plaintiff, as Administratrix, claims on behalf of the Estate of Brian Fisher any and all economic loss suffered by the Estate of Brian Fisher.

WHEREFORE, Plaintiff Jamie Fisher, as Administratix of the Estate of Brian Fisher, demand relief and prays for judgment against and claims damages against all Defendants for medical expenses, funeral expenses, lost wages, pain and suffering, property damage, loss of consortium, legal fees, in an amount in excess of jurisdictional limits of this Honorable Court together with interest.

## COUNT V

### State Law Cause of Action for Wrongful Death Pursuant to 42 Pa. C.S.A. §8301

### Jamie Fisher, Administratrix of the Estate of Brian Fisher v. All Defendants

92. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

93. This action is brought by Plaintiff Jamie Fisher, Brian Fisher's sister.

94. The Decedent did not bring any action for his personal injuries during his lifetime and no other action for his death has been commenced against the Defendants arising from his death.

95. This action is brought pursuant to the Wrongful Death Act, 42. Pa. C.S.A. §8301

96. The injuries suffered by the Decedent, Brian Fisher, as a result of the penetrating gunshot wounds were so severe that they resulted in his death not long after being shot on September 1, 2022.

97. As a direct and proximate result of the actions of the Defendants, the Decedent Brian Fisher and his survivors, including but not limited to his sister Jamie Fisher, have suffered damages including but not limited to medical expenses, lost wages, pain and suffering, and legal fees.

WHEREFORE, Plaintiff Jamie Fisher, as Administratix of the Estate of Brian Fisher, demand relief and prays for judgment against and claims damages against all Defendants for medical expenses, funeral expenses, lost wages, pain and suffering, property damage, loss of consortium, legal fees, in an amount in excess of jurisdictional limits of this Honorable Court together with interest.

        Respectfully Submitted:

        */s/ Monte J. Rabner*

        Monte J. Rabner, Esquire
        *Counsel for Plaintiff*
        Rabner Law Offices, P.C.
        222 Boulevard of the Allies
        2nd Floor
        Pittsburgh, PA 15222
        Phone: (412) 765-2500
        Fax: (412) 765-3900