UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ESTATE OF BRIAN EDWARD FISHER, deceased, by and through the ADMINISTRATRIX OF THE ESTATE JAMIE FISHER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH, et al.,<br><br>Defendants. | Case No. 2:24-cv-1234-PLD<br><br>Hon. Patricia L. Dodge<br><br>JURY TRIAL DEMANDED |

**DEFENDANT CITY OF PITTSBURGH'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant City of Pittsburgh[1] ("the City") respectfully submits this brief in support of its Motion to Dismiss all claims against the City in Plaintiff's Complaint at ECF No. 1.

**I.   Introduction**

The Complaint filed by Plaintiff, Jamie Fisher ("Plaintiff"), Administratrix of the Estate of Brian Fisher ("Mr. Fisher"), fails to state a claim upon which relief may be granted against the City. First, the Fourth and Fourteenth Amendment claims

---

[1] Plaintiff also names the "Pittsburgh Bureau of Police" ("PBP") as a party to this action. The PBP is an improper party to this action; only the City of Pittsburgh can be sued. *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (quoting *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."). To the extent Plaintiff's claims against the City are also claims against the PBP, the claims against the PBP should be dismissed with prejudice.

against the City (Count I) must be dismissed because such theories of liability are not cognizable against a municipality. Second, Plaintiff's *Monell* claim against the City (Count II) for its alleged failure to train employees must also be dismissed. Plaintiff has not included any facts showing a pattern of similar unconstitutional conduct that would have put the City on notice of any alleged deficiency in its training program. Moreover, Plaintiff has not established the requisite causal link between the alleged training deficiencies and Mr. Fisher's Constitutional injuries. Third and finally, Plaintiff's wrongful death claim and survival action (Counts IV and V) are barred by the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. C.S.A. §§ 8541, *et seq*.

## II.   Background[2]

The incident that gave rise to this lawsuit occurred on or about September 1, 2022. ECF No. 1 ¶ 14. Robinson Township Police Department received a call from Leah Hess's mother, who informed police that she had not seen her daughter in about 24 hours. *Id.* Robinson Township Police Officer Joseph Tomko was dispatched to determine the whereabouts of Ms. Hess. *Id.* ¶ 16. Officer Tomko determined that Ms. Hess may be at a house located at 1468 Rydal Street in the City. *Id.* ¶ 17. Officer Tomko proceeded to the address to confirm that Ms. Hess was there. *Id.* ¶ 20. PBP Officer Jordan Price was dispatched to assist Officer Tomko. *Id.* ¶ 24. The officers positioned themselves in front of the house, with Officer Tomko at the front door and

---

[2] The City summarizes and accepts as true facts alleged in Plaintiff's Complaint for purposes of this Motion to Dismiss only.

Officer Price in the front yard. *Id.* ¶¶ 26-27. Officer Tomko knocked on the door, and Mr. Fisher answered it. *Id.* ¶¶ 28, 32. Officer Price claims that he saw the Decedent, Mr. Fisher holding a firearm and that the Decedent moved the firearm in a threatening manner. *Id.* ¶ 33. Officer Price then shot Mr. Fisher. *Id.* Mr. Fisher died as a result of his gunshot wounds. *Id.* ¶ 47.

### III. Standard of Review

To survive a motion to dismiss, complaints must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted; quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must allege facts sufficient to "'raise a right to relief beyond a speculative level.'" *Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Though courts must accept all well-pleaded facts as true, this obligation does not extend to legal conclusions that are "couched as . . . factual allegation[s]." *Twombly*, 550 U.S. at 555. Moreover, a plaintiff "[can]not attempt to use discovery as a fishing expedition to determine the existence of . . . facts necessary to establish a legally adequate [claim]." *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013).

**IV.   Argument**

    A.    <u>Plaintiff's Fourth and Fourteenth Amendment claims against the City (Count I) are not cognizable theories of recovery against a municipality and must be dismissed.</u>

Under a *Monell* theory of liability, a municipality may be held liable under 42 U.S.C. § 1983 only when the governmental body itself "subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotations omitted). Municipal liability cannot be premised on a theory of vicarious liability; local governments are "responsible only for their own illegal acts." *Id.* (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *Andrews v. Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("A government entity may not be held liable under section 1983 under the *respondeat superior* doctrine. To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged.").

Count I of Plaintiff's Complaint alleges that all Defendants, including the City, violated Mr. Fisher's Fourth and Fourteenth Amendment constitutional rights. The facts included in support of this claim focus solely on the acts of the individual officers; specifically, Officer Price's alleged use of deadly force. *See Cichonke v. Bristol Twp.*, No. Civ. A. 14-4243, 2015 WL 1345439, at *5 (E.D. Pa. Mar. 25, 2015) ("Plaintiff cannot state a Fourth Amendment violation claim for municipal liability against Defendant [municipality] solely on the basis of [municipal employees'] conduct, because a claim for respondeat superior liability against a municipality is not a legally cognizable claim."). Thus, the claims against the City in Count I are

4

tantamount to a *respondeat superior* claim for the actions of its employee, Officer Price. For this reason, Plaintiff's Fourth Amendment and Fourteenth Amendment claims against the City in Count I fail as a matter of law and must be dismissed.

> B. <u>Plaintiff's *Monell* claim for failure-to-train fails because Plaintiff does not point to any similar incidents of constitutional violations by untrained employees or a causal connection between a training deficiency and Mr. Fisher's constitutional injuries.</u>

A plaintiff may allege that a municipality is liable under *Monell* by alleging that the municipality (1) had a policy or custom that led to his or her injuries or (2) failed to train its employees and "said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). Under a failure-to-train theory of municipal liability, the plaintiff must show that the City's alleged failure was the "moving force" behind the plaintiff's alleged injuries. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 399 (1997) ("plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged"); *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (applying the "moving force" requirement in the context of a failure-to-train theory of liability).

A *Monell* claim brought under a theory of failure to train is difficult to plead and prove; a municipality's liability under *Monell* is "at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Thus, the Third Circuit has explained that establishing "municipal liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). The Third Circuit requires that § 1983 claims against municipalities "'contain a modicum of

5

factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs.'" *Freedman v. City of Allentown*, 853 F.2d 1111, 1114 (3d Cir. 1988) (quoting *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir. 1981)); *see also Rotolo v. Charleroi*, 532 F.2d 920, 922 (3d Cir. 1976) ("Plaintiffs in civil rights cases are required to plead facts with specificity"); *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) ("Simply paraphrasing section 1983 . . . fails to satisfy the rigorous standards of culpability and causation necessary to state a claim for municipal liability.").

Plaintiff's Complaint fails to meet this stringent standard. At the outset, Plaintiff's Complaint fails to include facts specific to the City's alleged failures, as the City and Robinson Township are grouped together and are alleged to have identical failures and deficiencies in their training programs. *See* ECF No. ¶¶ 63-79. Moreover, Plaintiff has not adequately pled facts to establish that the City failed to train its officers, or that any alleged failure was the "moving force" that caused the Decedent's constitutional injuries.

       *i.*    *Plaintiff's Complaint does not point to any prior pattern of constitutional violations to show that policymakers were on notice of alleged deficiencies in the City's training.*

Plaintiffs generally plead and prove a municipality's deliberate indifference by showing a "pattern of similar constitutional violations by untrained employees."[3] *Est.*

---

[3] The City acknowledges that a plaintiff may also attempt to show a municipality's deliberate indifference by proceeding on a "single incident" theory of *Monell* liability. *Connick*, 563 U.S. at 63 (the Supreme Court "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference."). However, Plaintiff appears to advance her theory

*of Paone v. Plymouth Twp.*, No. CV 22-2178, 2023 WL 5044952, at *3 (E.D. Pa. Aug. 8, 2023) (citing *Connick*, 563 U.S. at 62). Similar, previous constitutional violations are necessary to show that "city policymakers [were] on actual or constructive notice that a particular omission in their training program cause[d] city employees to violate citizens' constitutional right[.]" *Connick*, 563 U.S. at 61; *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (internal quotations omitted) ("A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action").

Thus, district courts in the Third Circuit have rejected *Monell* failure-to-train claims that do not point to prior instances of similar misconduct. *See Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014) (dismissing failure-to-train claim where complaint "did not allege any facts that could support an inference that the [the defendant] was on notice of the risk of retaliation for First Amendment protected speech by employees, and that it was deliberately indifferent to this risk"); *Thivener v. Nero*, No. CV 22-238, 2023 WL 4295826, at *2 (W.D. Pa. June 30, 2023) (Bissoon, J.) ("Dismissal of Plaintiff's *Monell* claim is also warranted. Plaintiff does not attempt to identify prior, similar incidents revealing a pattern of constitutional violations."); *Fitzgerald v. Martin*, No. CV 16-3377, 2017 WL 3310676, at *19 (E.D. Pa. Aug. 3,

---

of *Monell* liability based on an alleged pattern of unconstitutional behavior, so the City addresses this theory as more fully explained herein.

7

2017) (dismissing *Monell* claim where plaintiff "failed to allege any facts to support that [the Defendants] had a pattern or history of making similar false arrests" and "failed to allege any facts showing that a [municipal] policymaker knew or should have known that the county's current training policies would fail to prevent his alleged false arrest.").

Here, Plaintiff appears to proceed on a theory that the City was aware of the inadequacy of its training based on past similar incidents. See ECF No. 1 ¶ 75 ("The Defendants were aware of the obvious need for improvement and inadequacy of their programs and procedures and that the same would result in a violation the Constitutional rights of individuals including Decedent Brian Fisher"); *id.* ¶ 70 ("As a consequence of the informal culture, practice and custom of Pittsburgh Police Department and Robinson Police Department to shoot immediately, a pattern of repeated serious violations of the Constitutional Rights of citizens has formed."); *id.* ¶ 70 (emphasis added) ("The failure of the Defendants to provide and ensure proper training, supervision and discipline has caused the Decedent *and others* to suffer violations of their Constitutional Rights.'").

In support of this claim, Plaintiff generally alleges that the City inadequately trained officers in numerous respects related to assessing threats prior to using deadly force. ECF No. 1 ¶ 67(a)-(f). However, Plaintiff does not point to any "prior, similar incidents revealing a pattern of constitutional violations" that would have put City policymakers on notice the City's training was deficient. *See Thomas*, 749 F.3d at 223; *Thivener*, 2023 WL 4295826, at *2. Plaintiff's conclusion that there are a

"pattern of repeated serious violations of the Constitutional Rights of citizens" is simply a recitation of the standard to show deliberate indifference and is insufficient to state a *Monell* claim. *See Wood*, 568 F. App'x at 104 ("Simply paraphrasing section 1983 . . . fails to satisfy the rigorous standards of culpability and causation necessary to state a claim for municipal liability."). Accordingly, Plaintiff's failure-to-train *Monell* claim should be dismissed.

> ii. <u>Plaintiff's Complaint does not plausibly allege that the City's alleged failure-to-train caused Mr. Fisher's injuries.</u>

In addition to showing a similar pattern of constitutional violations, the plaintiff must also plead facts showing that the City's alleged failure to train caused, or was the "moving force," behind the alleged injuries. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 399 (1997). To satisfy this requirement, the plaintiff must show "the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Thomas*, 749 F.3d at 226 (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390 (1989)). It is not enough to show that employees "could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." *Id.* (quoting *Colburn v. Upper Darby Twp.,* 946 F.2d 1017, 1029-30 (3d Cir. 1991)).

The causation requirement is critical; a plaintiff's failure to set forth facts showing a causal connection between a municipal failure and his alleged constitutional injury is fatal to a claim for *Monell* liability. *See Casciano v. City of Paterson*, No. CV 19-9475, 2022 WL 170857, at *4 (D.N.J. Jan. 19, 2022) (dismissing a *Monell claim* where the plaintiff failed to "explain the causal link between the

execution of the policy and the injury suffered"); *Hill v. City of Philadelphia*, No. CV 16-3868, 2017 WL 3263786, at *3 (E.D. Pa. Aug. 1, 2017) (dismissing a *Monell* claim where the plaintiff did not "allege any facts that provide support for the claim that a municipal custom or policy exists, much less that an official custom or policy caused the harm alleged here").

Here, Plaintiff fails to plead any facts demonstrating a causal connection between any alleged inadequacy in the City's training and his alleged injuries. Plaintiff merely concludes: "The failure of the Defendants to provide adequate training with regard to using deadly force, caused the deprivation of the rights of Decedent by Officer Price and Officer Tomko." ECF No. 1 ¶ 72; *see also id.* ¶ 77. This threadbare recitation of the one element of a *Monell* claim is insufficient to survive a motion to dismiss. *See Fowler*, 578 F.3d at 210. Accordingly, Plaintiff's *Monell* claim should be dismissed.

    C.    <u>Plaintiff's state law wrongful death claim and survivor's action against the City (Counts IV and V) are barred by the Tort Claims Act.</u>

The Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541(a). The Tort Claims Act provides exceptions to this general rule. 42 Pa.C.S. § 8542(b). Liability may attach where a municipal employee acts negligently with respect to (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; or (9) sexual abuse. *Id.* § 8542(b).

The "sweeping immunity" of the Tort Claims Act "bars any suit involving an injury, whether the injury is physical, mental, reputational or economic . . . unless the suit falls within one of the eight exceptions contained in section 8542(b)." *Panas v. City of Philadelphia*, 871 F. Supp. 2d 370, 375 (E.D. Pa. 2012) (cleaned up). "Negligent acts" as defined in Section 8541(a) "shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." *Id.*

Here, Plaintiff alleges that the City failed to adequately train its employees, which does not fall under any of the exceptions to immunity in 42 Pa.C.S. § 8542(b). Moreover, Plaintiff alleges that the City's employee, Officer Price, acted "willful[ly], wanton[ly], malicious[ly], and . . . with reckless disregard for the rights and safety of the Decedent." ECF No. 1 ¶ 60. He further alleges that Officer Price committed intentional torts. *Id.* ¶¶ 80-86. Such acts are outside the purview of negligent acts that may impose liability onto the City. *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 287 (3d Cir. 2006) (willful misconduct "has the same meaning as the term 'intentional tort'"); *see Panas*, 871 F. Supp. 2d at 376 ("the Tort Claims Act precludes Plaintiffs' assault and battery claim against the City because the City has immunity for such intentional torts.") (collecting cases). Accordingly, Plaintiff has not set forth a viable wrongful death or survivor's action against the City. Accordingly, any state law claim against the City must be dismissed.

## V.   Conclusion

For the foregoing reasons, all claims against the City in Plaintiff's Complaint at ECF No. 1 should be dismissed.

Respectfully submitted,

KRYSIA M. KUBIAK
City Solicitor

BY:  */s/ Hillary M. Weaver*
Hillary M. Weaver, Esquire
Assistant City Solicitor
PA I.D. No. 322545
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA  15219
(412) 255-2014
hillary.weaver@pittsburghpa.gov
*Counsel for the City of Pittsburgh*