IN THE UNITED STATES DISTRICT COURT OF THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE ESTATE OF BRIAN EDWARD FISHER, deceased, by and through the ADMINISTRATRIX OF THE ESTATE JAMIE FISHER | : : : : : : : : : : : : : : : : : : : : | Case No. 2:24-cv-01234-PLD |
| *Plaintiff*, v. | | |
| CITY OF PITTSBURGH; PITTSBURGH BUREAU OF POLICE; ROBINSON TOWNSHIP; ROBINSON TOWNSHIP POLICE DEPARTMENT; POLICE OFFICER JORDAN PRICE; and POLICE OFFICER JOSEPH TOMKO | | |
| *Defendants*. | | |

**DEFENDANTS, ROBINSON TOWNSHIP, ROBINSON TOWNSHIP POLICE DEPARTMENT AND POLICE OFFICER JOSEPH TOMKO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

AND NOW, come Defendants, Robinson Township, Robinson Township Police Department and Police Officer Joseph Tomko, by and through their attorneys, FRANCIS D. WYMARD, ESQUIRE and WILLIAM J. FERREN & ASSOCIATES, and submit the within Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6), setting forth as follows:

I. **BACKGROUND**

Plaintiff filed a Complaint on August 30, 2024, setting forth various claims of constitutional violations on behalf of Defendants. (E.C.F. No. 4). In response, all Defendants

filed Motions to Dismiss the Complaint for Plaintiff's failure to state a claim. (E.C.F. Nos. ¶¶29 and 36). In lieu of filing a response to the Motions to Dismiss, Plaintiff filed an Amended Complaint setting forth the identical claims set forth in the Original Complaint. Specifically, Plaintiff set forth claims under the Fourth and Fourteenth Amendments to the United States Constitution for excessive force and failure to properly render care. The Amended Complaint also sets forth separate *Monell* claim against the governmental entities. Lastly, the Amended Complaint sets forth a claim for Assault and Battery against Police Officer Jordan Price alone. The Amended Complaint alleges that on or about September 1, 2022, Defendant Police Officers were dispatched to determine the whereabouts of a missing person, namely, Leah Hess. (E.C.F. No. 43 at ¶¶14 and 16). Upon information and belief, the Police Officers determined that Ms. Hess was at a house located at 1468 Rydal Street, Pittsburgh, PA. (E.C.F. No. 43 at ¶17). The Police Officers went to 1468 Rydal Street in full uniform and knocked on the front door. (E.C.F. No. 43 at ¶¶20, 23, 24, and 28). Plaintiff answered the door with a firearm in his hand and after Plaintiff moved his arm in such a way that made Police Officer Jordan Price of the Pittsburgh Police Department believe he was in danger, Officer Price fired three (3) shots from his firearm at Plaintiff. (E.C.F. No. 43 at ¶¶32 and 33). Police Officer Joseph Tomko of the Robinson Township Police Department did not draw or discharge his firearm in the altercation. The Police Officers called for emergency medical assistance and then stayed on scene while an ambulance arrived to treat Plaintiff. (E.C.F. No. 43 at ¶43).

Defendants, Robinson Township, Robinson Township Police Department and Police Officer Joseph Tomko again move this Honorable Court to dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Plaintiff's Complaint fails to set forth any evidence that Officer

Tomko used excessive force. Further, the Complaint fails to establish that Officer Tomko failed to intervene or render medical care in violation of the Fourteenth Amendment's Due Process Clause. The Amended Complaint specifically states that Officer Price **immediately** fired three shots from his firearm, giving Officer Tomko no time to respond and the Amended Complaint further states that the responding police officers called for emergency medical assistance and an ambulance arrived on scene, at which time Plaintiff was treated. Lastly, Plaintiff has not pled facts sufficient to support a plausible *Monell* claim against Robinson Township and/or the Robinson Township Police Department under the governing legal standard.

## II.     MOTION TO DISMISS

### A.  STANDARD OF REVIEW

In determining whether or not a motion to dismiss should be granted, a district court must accept as true the factual allegations in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. *Shaev v. Saper*, 320 F.3d 373, 375 (3d Cir. 2003).  The court should grant the motion to dismiss, if "no relief could be granted under any set of facts which could be proved." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997) (citing *D.P. Enters. v. Bucks County Cmty. Coll.,* 725 F.2d 943, 944 (3d Cir. 1984)). Further, the Court need not accept a complaint's bald assertions, subjective characterizations, and legal conclusions when deciding a motion to dismiss. *Id.*  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), which gives the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'" *Atlantic Corp. v. Twombly,* 550 U.S. at 555 (alteration in original)

(quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556). To be facially plausible, a claim must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly,* 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 557). If a plaintiff has not "nudged [his] claim across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570; *12 *see also, ATSI Communications, Inc. v. ShaarFund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Twombly,* 550 U.S. at 555). In the end, a Rule 12(b)(6) motion should be granted if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed.2004)).

Additionally, to establish a § 1983 claim, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Estate of Smith v. Marasco,* 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. Liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. *Argueta v. U.S. Immigration and Customs Enforcement,* 643 F.3d 60, 73

(3d Cir. 2011).

## B. ARGUMENT

1. **The Complaint Fails to Establish that Police Officer Joseph Tomko Violated Plaintiff's Constitutional Rights by Using Excessive Force**

Liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. *Argueta,* 643 F.3d at 73. (the plaintiff must establish direct and involvement in the complained-of misconduct). "A government official is only liable for his or her own misconduct." *Ashcroft*, 556 U.S. at 129. A defendant may not be liable under § 1983 because they were the member of a group without more. *Rizzo v. Goode*, 423 U.S. 362, 370-71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)]), *Aneta v. City of Wildwood*, 790 F.2d 1063, 1067-68 (3d Cir. 1986).

The Amended Complaint in this case fails to set forth any facts that establish that Police Officer Joseph Tomko physically touched Plaintiff, or used any force, let alone any allegedly unconstitutional excessive force. In fact, the Amended Complaint clearly establishes that Officer Tomko did not use excessive force as his specific conduct is not referenced in Count I of Plaintiff's Amended Complaint as it relates to a claim for excessive force. As such, if Plaintiff is making an excessive force claim against Police Officer Joseph Tomko, the claim should be dismissed.

2. **The Complaint Fails to Establish that Police Officer Joseph Tomko Violated Plaintiff's Constitutional Rights by Failing to Intervene**

While an officer has a clearly established duty to take reasonable steps to protect a victim from another officer's use of excessive force, the duty to intervene must be considered in light of whether there is a realistic and reasonable opportunity to intervene. Generally, the duration of the incident is the guiding factor in assessing whether a reasonable opportunity to intervene existed.

"Where an incident is momentary, its 'brevity' may 'defeat a … failure-to-intervene claim." *Ricks v. Shover*, 891 F.3d 468 (3rd Cir. 2018).

The Amended Complaint states that Plaintiff opened the front door in response to the police knocking. Before Plaintiff could even fully present himself through the doorway, Officer Price immediately fired three shots from his firearm directly at Plaintiff. These shots were fired withing three seconds of Plaintiff opening the door. (E.C.F. No. 43, ¶32). Given the speed with which the incident occurred, no reasonable jury could conclude that Officer Tomko had a realistic and reasonable opportunity to intervene. As such, Plaintiff's claim that Officer Tomko failed to intervene in the alleged excessive force committed by Officer Price must be dismissed.

3. **The Complaint Fails to Establish that Police Officer Joseph Tomko Violated Plaintiff's Constitutional Rights by Failing to Render Medical Care**

A claim against a police officer in the Third Circuit for failure to render care after a plaintiff was shot is based on a violation of a plaintiff's Fourteenth Amendment right to due process, specifically alleging "deliberate indifference" to their serious medical needs following the shooting, potentially leading to a claim under 42 U.S.C. § 1983. *Smith v. Gransden,* 553 F. App'x 173, 177 (3d Cir. 2014).

To succeed, a plaintiff must demonstrate that the officer had a "clearly established" duty to provide medical aid after the shooting and that their failure to do so was "deliberately indifferent" to the plaintiff's serious medical needs, not just negligent. Factors considered by the court: (1) the severity of the plaintiff's injuries; (2) the officer's knowledge of the plaintiff's condition; (3) whether the officer took any steps to provide medical care or call for medical assistance; and (4) the time elapsed before medical care was provided.

In this case, the Amended Complaint alleges that the Defendant Officers deprived the Decedent of necessary medical care. (E.C.F. No. 43 at ¶108). However, the Amended Complaint

concedes that Officers Price and Tomko called for emergency medical assistance and remained on scene until an ambulance arrived on scene. (E.C.F. No. 43 at ¶43). As such, the undisputed facts in this case demonstrate that after Plaintiff was shot, an ambulance was called, there was no delay in the ambulance arriving on scene as it arrived within approximately ten minutes (E.C.F. No. 43 at ¶44), and upon arrival of the paramedics, medical aid was rendered.

Even if Plaintiff alleges a plausible constitutional duty to provide medical care in this case, where Plaintiff was shot after brandishing a firearm, the Amended Complaint fails to demonstrate that the Officer's actions "shock the conscience," as required by Third Circuit precedent in cases involving state created danger claims and/or allegations of failure to provide medical care. The "shocks the conscience" standard is a high threshold that requires conduct that is egregious and outrageous. *Kedra v. Schroeter*, 876 F.3d 424, 436 (3d Cir. 2017). Negligence or mere failure to act cannot meet this standard. Plaintiff's allegations, at most, describe potential negligence, but fail to rise to the level of egregious or conscience-shocking behavior required for a due process violation. With respect to this issue, police officers have no special medical training beyond basic first aid in treating gunshot wounds. Because of the officers' lack of training in this area, immediately calling 911 and then waiting for paramedics to arrive in lieu of treating would be, at most, negligent and thus not actionable under § 1983. Further, it is reasonable to believe that the Police Officers believed there was still a known threat in that they still had to deal with the fact that Plaintiff had a firearm and that would justify focusing their attention on securing the scene instead of providing aid. Further, the Amended Complaint states that Officers Tomko and Officer Price had to deal with Leah Hess after the incident. (E.C.F. No. 43 ¶45).

It must be noted that Plaintiff acknowledges that Leah Hess is not a trained medical

professional. (E.C.F. No. 43 ¶44). Like Ms. Hess, Officer Tomko is not a medical professional. Other than calling for EMS and remaining on scene, it is unclear what else Officer Tomko, who was in shock from the incident could have done. Then unfortunately despite the efforts of the paramedics who responded, Plaintiff was pronounced dead. (E.C.F. No. 43 ¶46). Therefore, due to the severity of the injuries, there was clearly nothing that Officer Tomko could have done.

Lastly, while there is a right to have a government actor intervene when the underlying constitutional violation involves excessive force of a person in custody or detention, the Third Circuit, in *Thomas v. City of Harrisburg*, 88 F.4th 275 (3d Cir. 2023), has definitively stated that there is no cause of action for a failure to intervene in a medical context.

Based on the foregoing, this Honorable Court should dismiss the alleged delay of medical care claim because nothing in the record suggests that Police Officer Joseph Tomko intentionally delayed medical treatment or otherwise acted with deliberate indifference to Plaintiff's serious medical needs and Plaintiff's conclusory allegations do not meet the necessary deliberate indifference standard.

4. **Qualified Immunity Requires that Plaintiff's Claims Against Police Officer Joseph Tomko be Dismissed**

As government officials engaged in discretionary functions, individual defendants are protected by qualified immunity from suits brought against them under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has repeatedly "stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Qualified immunity is governed by an objective

reasonableness standard which "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In evaluating qualified immunity, the pertinent inquiry is "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Curley v. Klem*, 298 F.3d 271, 280 (3d Cir. 2002). The test for qualified immunity is an objective one, and immunity will apply unless "every reasonable official would have understood" that the defendant's conduct violates a constitutional right. *Taylor v. Barkes*, 135 S. C.t 2042, 2044 (2015).

Qualified immunity protects Police Officer Joseph Tomko in this case, because it appears the only allegations against him in the Amended Complaint is that he failed to render medical care in a timely manner and it is submitted that it would not be clear to a similarly situated police officer in the same set of circumstances that Officer Tomko was in, that calling for an ambulance to treat Plaintiff, without more, was unlawful in this case. Plaintiff cannot establish that "every reasonable police officer would have understood" that calling an ambulance to treat Plaintiff after Plaintiff was shot, and then waiting for professional medical assistance, was reasonable in the situation. As such, the constitutional duty to render care in the context alleged here is not clearly established and therefore Officer Tomko's conduct, even if deemed improper, is shielded by qualified immunity.

5. **Plaintiff Has Failed to State a Claim Against Robinson Township and/or the Robinson Township Police Department Pursuant to the Elements Established by *Monell***

In order for Plaintiff to pursue any claim against Robinson Township and/or the Robinson Township Police Department, Plaintiff must have evidence of a Township and/or Police Department custom, policy or practice that caused the alleged constitutional deprivation.

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). A municipality cannot be held liable under 42 U.S.C. § 1983 under a *respondeat superior* theory for the conduct of its employees, simply based on the employment relationship. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). In order to hold a municipality liable as a "person" within the meaning of 42 U.S.C. § 1983, the plaintiff must establish that the municipality, itself, was somehow at fault. *Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985); *Monell,* 436 U.S. at 690-91.

In order to prove the existence of a municipal policy or custom, plaintiff must establish: (1) the existence of a formal policy, officially promulgated or adopted by a municipality, *Monell*, 436 U.S. at 690; or (2) that an official or officials responsible for establishing final policy with respect to the subject matter in question took action or made a deliberate, specific decision that caused the alleged violation of plaintiff's constitutional rights, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (citing *Tuttle*, 471 U.S. at 823); or (3) the existence of an unlawful practice by subordinate officials so permanent and well settled as to constitute "custom or usage," and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1988); or (4) if liability is based on a claim of failure to train or supervise, that "the failure to train amounts to deliberate indifference to the rights of persons with whom … [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy. *Tuttle*, 471 U.S. at 823-24.

The plaintiff must also "show there was a 'direct causal link' between the municipal decision at issue and the constitutional or statutory violation for which redress is sought." *Ickes,*

807 F. Supp. at 325-26, *quoting Harris,* 489 U.S. at 404. Causation exists for purposes of *Monell* where the connection between the policy and injury is so strong that it would be a plainly obvious consequence. *Bd. of County Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 411 (1997).

      Here, Plaintiff's generalized allegations about the government-related Defendants failing to properly train police officers, do not set forth a "pattern" or "practice" of excessive force against persons in Plaintiff's circumstances, and do not give rise to a claim. Plaintiff does not point to any similar incidents of constitutional violations by untrained employees or a causal connection between a training deficiency and Plaintiff's constitutional injuries. Plaintiff's logic would open the floodgates against any municipality for *Monell* liability. Importantly, Plaintiff's claim is premised upon mere accusations against Robinson Township and the Robinson Township Police Department, which Robinson Township and the Robinson Township Police Department vehemently denies. The Third Circuit has explained that establishing "municipal liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). The Third Circuit requires that § 1983 claims against municipalities "contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs." *Freedman v. City of Allentown*, 853 F.2d 1111, 1114 (3d Cir. 1988) (quoting *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir. 1981)); see also *Rotolo v. Charleroi,* 532 F.2d 920, 922 (3d Cir. 1976) ("Plaintiffs in civil rights cases are required to plead facts with specificity"); *Wood v. Williams,* 568 F. App'x 100, 104 (3d Cir. 2014) ("Simply paraphrasing section 1983 . . . fails to satisfy the rigorous standards of culpability and causation necessary to state a claim for municipal liability."). Plaintiff's Complaint fails to meet this stringent standard as the allegations set forth in the Complaint do not satisfy the pleading requirements for a *Monell*

claim, and therefore the claims against Robinson Township and the Robinson Township Police Department should be dismissed. More simply put, the *Monell* claim against the Robinson Township Police Department is conclusory, does not make any specific references like it does against the City of Pittsburgh (E.C.F. No. 43 ¶¶48-86), and does not amplify the "buzz" words of the claim. As such, the claim against the Robinson Township Police Department should be dismissed.

   6. **Plaintiff's Fourth and Fourteenth Amendment Claims at Count I Cannot Proceed Against Robinson Township and Robinson Township Police Department**

Plaintiff's Fourth and Fourteenth Amendment claims against Robinson Township and the Robinson Township Police Department at Count I are not cognizable theories of recovery against a municipality and must be dismissed. As aforementioned, under a *Monell* theory of liability, a municipality may be held liable under 42 U.S.C. § 1983 only when the governmental body itself "subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotations omitted). Municipal liability cannot be premised on a theory of *respondeat superior*. To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged. Count I of Plaintiff's Amended Complaint alleges that all Defendants, including Robinson Township and the Robinson Township Police Department, violated Plaintiff's Fourth and Fourteenth Amendment constitutional rights. The facts included in support of this claim focus solely on the acts of the individual officers; specifically, Officer Price's alleged use of deadly force. *See, Cichonke v. Bristol Twp.*, No. Civ. A. 14-4243, 2015 WL 1345439, at *5 (E.D. Pa. Mar. 25, 2015) ("Plaintiff cannot state a Fourth Amendment violation claim for municipal liability against Defendant [municipality] solely on the basis of [municipal employees'] conduct, because a claim for *respondeat superior* liability against a municipality is

not a legally cognizable claim."). Thus, the claims against the Robinson Township and the Robinson Township Police Department in Count I are tantamount to a *respondeat superior* claim for the actions of its employee, Officer Tomko. As such, Plaintiff's Fourth Amendment and Fourteenth Amendment claims against Robinson Township and the Robinson Township Police Department in Count I fail as a matter of law and must be dismissed.

### III. CONCLUSION

All claims in Plaintiff's Amended Complaint should be dismissed against Robinson Township, Robinson Township Police Department and Police Officer Joseph Tomko, as Plaintiff has failed to state viable causes of action against them. Further, amendment would be futile and therefore dismissal with prejudice is appropriate.

Respectfully submitted by,

**WILLIAM J. FERREN & ASSOCIATES**

*s/Francis D. Wymard*

By: _____
Francis D. Wymard, Esquire
Attorney for Defendant, Robinson Township; Robinson Township Police Department; and Police Officer Joseph Tomko
P.O. Box 2903
Hartford, CT 06104-2903
Phone: (412) 338-3197
Fax: (885) 832-2459
fwymard@travelers.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November 2024, I electronically filed the following Memorandum of Law in Support thereof the Motion to Dismiss with the clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Monte J. Rabner, Esquire
Fred G. Rabner, Esquire
Rabner Law Offices, P.C.
222 Boulevard of the Allies
2nd Floor
Pittsburgh, PA 15222
monte@rabnerlaw.com
fred@rabnerlaw.com
*(Counsel for Plaintiff)*

Hillary M. Weaver, Esquire
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
Hillary.Weaver@pittsburghpa.gov
*(Counsel for City of Pittsburgh and Police Officer Jordan Price)*

**WILLIAM J. FERREN & ASSOCIATES**

By: *s/Francis D. Wymard*
_____

Francis D. Wymard, Esquire
Attorney for Defendant, Robinson Township; Robinson Township Police Department; and Police Officer Joseph Tomko
PA I.D. #94749
P.O. Box 2903
Hartford, CT 06104-2903
Phone: (412) 338-3197
Fax: (885) 832-2459
fwymard@travelers.com